**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Papago Parago Partners, LLC, | No. CV 06-2448-PHX-FJM |
| Appellant, | **ORDER** |
| vs. | |
| Three-Five Systems, Inc., | |
| Appellee. | |

The court has before it appellant Papago Paragon Partners, LLC's ("Papago") opening brief (doc. 13), appellee Three-Five Systems, Inc.'s ("Three-Five") response (doc. 15) and Papago's reply (doc. 16). Papago appeals a September 28, 2006 order by the United States Bankruptcy Court for the District of Arizona. We have jurisdiction to hear Papago's appeal pursuant to 28 U.S.C. § 158(a)(1). For the reasons stated below, we affirm.

I.

On October 29, 2004, Three-Five sold its interest in a commercial building and 5.73 acres of real property in Tempe, Arizona ("Tempe Property") to a company which later assigned its interest to Papago. On December 30, 2004, Papago paid $9,350,000 for the property, and executed a promissory note, secured by a deed of trust. The note provides that Papago will make monthly interest payments to Three-Five, with a $2,000,000 principal payment due on December 30, 2009.

Also on December 30, 2004, Papago and Three-Five entered into a five year lease, through which Papago leased the Tempe Property back to Three-Five. The lease requires that Three-Five pay $1,288,032.50 in annual rent, along with insurance charges and property taxes. The lease also states that Papago consents to Three-Five's "subletting approximately [64,000 square feet of the Tempe Property] to Brillian Corporation." Debtor's Opposition to Creditor's Brief in Support of Administrative Claim, Record on Appeal ("RA") Doc. 7 Exhibit F at 12.[1] The note executed by Papago provides that Papago's payment obligations on the note are to be excused if Three-Five defaults on the lease and fails to cure its default. RA Doc. 7 Exhibit E at 2.

On September 8, 2005, Three-Five filed a Chapter 11 petition, and on October 31, 2005, rejected the lease. On November 30, 2005, Papago filed an application for allowance of an administrative claim in the amount of $24,839.96, which represented Three-Five's unpaid post-petition property tax and insurance charges, due pursuant to the terms of the lease. Three-Five did not oppose the payment of the administrative claim, but argued that the bankruptcy court should offset the claim against Papago's note obligations, and therefore deem the claim satisfied. Papago contended that the claim could not be offset against its note obligations because as a result of Three-Five's lease default, Papago was no longer required to make its note payments.

In a June 14, 2006 minute entry, the bankruptcy court held that Papago is not excused from its duties under the note because "the excused from paying term in the note is unenforceable." Minute Entry, RA Doc. 9 at 1. In so holding, the bankruptcy court

---

[1] The documents that form the record on appeal are attached to Papago's Notice of Filing Copies of Record on Appeal (Amended) (doc. 9). Although Three-Five also designated a document to be included in the record, that document is immaterial to the conclusions reached in this order.

- 2 -

concluded that the term (1) attempted to "waive the benefits of bankruptcy, namely the ability to reject burdensome leases" and (2) acted as a penalty. Id. at 3.[2]

## II.

Papago argues that we should reverse the bankruptcy court because (1) it failed to rule that the note was an executory contract; (2) the note and the lease are two parts of one agreement; (3) the note is a rejected executory contract; (4) the default provision was not drafted in contemplation of Three-Five's bankruptcy and (5) the default provision is not an unenforceable penalty.

### A.

We first address Papago's argument that the bankruptcy court erred because it "made no ruling whatsoever" on the question of whether the note is an executory contract. Brief at 8. Before turning to that issue, we must determine whether the bankruptcy court decided whether the note is an executory contract. Three-Five contends that the issue was decided because "the Court acknowledged that issue at the beginning of its ruling," and Papago argued that the issue was controlling both at oral argument and in a brief filed below. Response at 8.

However, although the executory contract issue was labeled controlling, Papago asked the bankruptcy court to find that it owed no performance to Three-Five under the note "because of the note's default provisions." Creditor's Brief in Support of Administrative Claim, RA Doc. 6 at 6. The bankruptcy court declined to excuse Papago's performance under the note by ruling on the effect of the default provision. See Minute Entry, RA Doc. 9 at 2 (stating that "the provision excusing [Papago's] performance on the note is unenforceable because it is a prepetition waiver of the benefits of bankruptcy"); id. at 3 (explaining that "the term is an unenforceable penalty"). Although the parties' briefs below

---

[2] The Order Papago appeals, see Notice of Appeal, attached to Transmittal of Appeal to District Court (doc. 1), states that the note's default term is unenforceable "for the reasons stated in the Minute Entry." Order at 2. The briefs before us address the conclusions reached in the Minute Entry.

- 3 -

1 suggest that the issue of whether the note was an executory contract controlled, the
2 bankruptcy court avoided deciding it.

3 We also reject Three-Five contention that because the bankruptcy court eliminated
4 "the only provision that could even remotely be argued to turn the Note into an executory
5 contract, the Court axiomatically ruled that the Note was not executory." Response at 10.
6 The effect of the court's order does not retroactively alter the nature of the note.

7 While we agree with Papago that the bankruptcy judge did not determine whether the
8 note is an executory contract, we nevertheless conclude that the record supports affirming
9 the bankruptcy judge's enforceability holding.[3]

10                                                          B.

11 Next we address Papago's argument that the note and the lease are two parts of one
12 indivisible agreement. Brief at 8. Three-Five rejected the lease pursuant to 11 U.S.C. §
13 365(a). See RA Doc. 7 at 4. If the lease and the note are two parts of one agreement, Three-
14 Five's rejection of the lease constitutes a breach of the entire contract. See 11 U.S.C. §
15 365(g). Three-Five contends that the note and the lease are separate contracts. Response at
16 12.

17 "Whether a number of promises constitute one contract or more than one is to be
18 determined by inquiring 'whether the parties assented to all the promises as a single whole,
19 so that there would have been no bargain whatever, if any promise or set of promises were
20 struck out.' " United States v. Bethlehem Steel Corp., 315 U.S. 289, 298, 62 S. Ct. 581, 587
21 (1942) (quoting Williston on Contracts § 863). We are aware of no Arizona decision that

---

[3] If the default provision is unenforceable, Papago's performance might nevertheless be excused if the note is an executory contract. See infra, Section II.C. Therefore, the issue of whether the note is an executory contract is arguably dispositive. However, the record supports the conclusion that the note is not an executory contract. Also, the note is unenforceable for a reason not addressed, but nevertheless supported by the record. Therefore, we have reason to affirm the bankruptcy judge's order. See Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1223 (9th Cir. 1999) (stating that we may affirm the bankruptcy judge "on any ground fairly supported by the record").

- 4 -

applies this test in a meaningful manner.  However, the test <u>Bethlehem Steel</u> employed to determine whether two promises constitute one contract has also been applied to analyze the severability of an entire contract.  See <u>Franklin v. American Nat'l Ins. Co.</u>, 135 F.2d 531, 533 (10th Cir. 1943).  We acknowledge that "[t]he issue of entire contract versus separate contracts must not be confused with the issue of divisibility of a contract."  <u>McKinney v. Gannett Co.</u>, 660 F. Supp. 984, 1005 (D.N.M. 1981).  However, we conclude that in light of the absence of applicable authority, we may look to Arizona's severability test to determine whether the lease and the note constitute one contract.  This is an approach endorsed by Papago.  See <u>Reply</u> at 4 (discussing the severability of the note and lease).

A contract's severability is decided by "[t]he intention of the parties, as determined from the contractual language and the subject matter." <u>Kahl v. Winfrey</u>, 81 Ariz. 199, 203-04, 303 P.2d 526, 529 (1956).  Another factor is "whether the consideration for two or more promises is entire or if it is capable of apportionment among the several promises." <u>Id.</u> When "the consideration for a contract can be apportioned, each item of the contract will be treated as a separate unit rather than a part of the whole." <u>Goodman v. Newzona Inv. Co.</u>, 101 Ariz. 470, 473, 421 P.2d 318, 321 (1966).  When a single contract contains severable agreements, "the debtor may reject one agreement and not another." <u>Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.</u>, 83 F.3d 735, 741 (5th Cir. 1996).

Papago argues that the note and the lease are indivisible because:

> The principal sum due under the Note was not payable until December 30, 2009, the termination date of the Lease. The Note specifically referenced the Deed of Trust and provided that uncured lease defaults excused payment not only of the Note obligations but obligations under the Deed of Trust as well . . . the Deed of Trust tied the parties' obligations under the Lease and Note, and rendered [Papago's] performance specifically contingent upon Three-Five's compliance with the terms of the Lease.

<u>Brief</u> at 8.  Further, "the note, lease, and deed of trust were . . . executed on the same date, and contained the same termination dates."  <u>Reply</u> at 4.[4]

---

[4] Papago argues that in determining severability, we should consider the declaration of Douglas A. Dragoo, which purports to provide further evidence of the parties' intent that

- 5 -

The note and deed of trust both provide that Three-Five's default on the lease effects a default on the note and the deed of trust. However, in the context of bankruptcy, a cross-default clause does not integrate otherwise separate or severable agreements. See In re Convenience USA, Inc., 2002 Bankr. LEXIS 348 *1, at *21 (Bankr. D.N.C. Feb. 12, 2002) (citing In re Plitt Amusement Co. of Washington, Inc., 233 B.R. 837, 847 (Bankr. C.D. Cal. 1999)).

Furthermore, although the documents were executed on the same day, and terminated on the same day, those facts alone are not evidence of an intent to render the agreements indivisible. As Three-Five notes, "the Lease makes no mention of the Note or Deed of Trust . . . none of the default remedies provided in the Lease makes any reference to [Papago's] obligations under the Note," and "the Lease contained an unambiguous 'integration clause.' " Response at 13. The lease provides that Three-Five will pay a certain amount of monthly rent, RA Doc. 7 Exhibit F at 1, and the default grounds and remedies do not include any mention of the note or the deed of trust. Id. at 13-15. Papago itself explains that if it failed to meet its obligations on the note, Three-Five "would foreclose on the deed of trust," Reply at 7, rather than be excused from performance on the lease.

We conclude that the parties' intent, the divisible nature of the subject matter, and the apportionable consideration exchanged render the note and the lease separate agreements. Therefore, in rejecting the lease, Three-Five did not simultaneously reject the note.

C.

Next, Papago argues that the note is an executory contract. Brief at 9-10. When a debtor fails to assume or reject an executory contract within the timeframe specified by 11 U.S.C. § 365(d)(1), the contract is deemed rejected. In re Gov't Sec. Corp., 101 B.R. 343,

---

the note and lease be indivisible. See Reply at 4. In determining whether the declaration is admissible, we must first ascertain whether the note language is "reasonably susceptible" to the interpretation the declaration asserts. Taylor v. State Farm Mut. Auto. Ins. Co., 175 Ariz. 148, 154, 854 P.2d 1134, 1140 (1993). We find that the note is not susceptible to the proffered interpretation. We exclude the evidence because it attempts to both vary and contradict the written words of the note. Id.

347 (Bankr. D. Fla. 1989). "[T]he rejection of an executory contract by the debtor constitutes a breach of such contract and gives rise to a claim by the non-bankrupt party against the debtor's estate." Id. Presumably, Papago seeks to avoid its obligations under the note by arguing that Three-Five has breached the note. If the note is a breached executory contract, Papago may be able to avoid performance of its note obligations regardless of the default provision's enforceability.

An executory contract is "one on which performance is due to some extent on both sides;" that is, "the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other." In re Texscan Corp., 976 F.2d 1269, 1271-72 (9th Cir. 1992). To determine whether a contract is executory, we must (1) evaluate "the obligations of both parties and determine whether they are material obligations" and (2) "determine whether, on the date the petition was filed . . . either party's failure to perform its remaining obligations would give rise to a material breach and excuse performance." Id. at 1272.[5]

Papago argues that the note is an executory contract because Three-Five has continuing obligations under the note by virtue of the default provision. Three-Five's failure to cure its lease default, Papago contends, is a material breach excusing Papago's performance. Brief at 9. The default provision ostensibly excuses Papago's performance. However, the fact that the condition described in the default provision occurred does not determine that a material breach occurred, or that Three-Five has unperformed obligations. Rather, the default provision establishes Papago's remedy upon the occurrence of a certain condition.

---

[5] Federal law determines whether a contract is executory for purposes of the Bankruptcy Code. In re Wegner, 839 F.2d 533, 536 (9th Cir. 1988). However, "[t]he materiality of a remaining obligation and whether the failure to perform a remaining obligation is a material breach of the contract is an issue of state law. " In re Texscan Corp., 976 F.2d at 1272.

1    On December 30, 2004, Three-Five executed the deed of trust, conveyed it to the
2 trustee, and provided Papago with clear title. Response at 12. At that point, Three-Five's
3 obligations under the note were performed. Only Papago's obligations remained
4 unperformed. The deed itself provides that it was given "for the purpose of securing (1)
5 performance of each agreement of [Papago] herein contained, and (2) payment of the
6 indebtedness evidenced by a Promissory Note dated December 30, 2004, and any extension
7 or renewal thereof, in the original principal amount of Two Million Dollars . . . executed by
8 [Papago]." Second Deed of Trust, RA Doc. 7 Exhibit D. Therefore, we conclude that the
9 note is not an executory contract.

10                                          D.

11   Having determined that the note is a separate, non-executory contract, we turn to the
12 note's default provision. Papago argues that the default provision is enforceable because the
13 bankruptcy court erred in determining that the provision (1) was drafted in contemplation of
14 Three-Five's bankruptcy, and (2) was a penalty. Brief at 10-14. We do not reach these
15 arguments. Instead, we affirm the bankruptcy court's conclusion that the default provision
16 is unenforceable on an independent ground supported by the record.

17   Cross-default provisions are enforceable in bankruptcy when they do *not* "affect the
18 debtor's right to assume and assign executory contracts and unexpired leases." In re
19 Wheeling-Pittsburgh Steel Corp., 54 B.R. 772, 778 (Bankr. D. Pa. 1985). However, "cross-
20 default provisions are unenforceable in bankruptcy where they would restrict the debtor's
21 ability to fully utilize the provisions of § 365 with respect to an executory contract or
22 unexpired lease." In re Convenience USA, Inc., 2002 Bankr. LEXIS 348 at *21-22 . A
23 default provision triggered by inability to perform under a lease is a default provision
24 triggered by a party's financial problems. See In re Sambo's Restaurants, Inc., 24 B.R. 755,
25 757 (Bankr. D. Cal. 1982). Because that kind of provision has the effect of limiting a
26 debtor's ability to assume or reject, it is unenforceable. Id.

27   The default provision may not have been drafted in an attempt to have Three-Five
28 waive the benefits of bankruptcy. See Brief at 12. However, as Three-Five contends, as a

- 8 -

1 result of the default provision, rejecting the lease "would have such horrific consequences
2 that it becomes impracticable to do so."  Response at 17.  The default provision prevents
3 Three-Five from exercising its rights to reject the lease.  Therefore, regardless of the parties'
4 intent, the effect of the default provision renders it unenforceable.

**THEREFORE, IT IS ORDERED AFFIRMING** the bankruptcy court's September 28, 2006 order.

DATED this 29th day of June, 2007.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge